# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Tatiana Goodlett | : | |
| | : | |
| v. | : | No. 1171 C.D. 2018 |
| | : | Submitted: January 25, 2019 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

**BEFORE:  HONORABLE P. KEVIN BROBSON, Judge**
**HONORABLE ANNE E. COVEY, Judge**
**HONORABLE CHRISTINE FIZZANO CANNON, Judge**

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  May 17, 2019**

The Commonwealth of Pennsylvania, Department of Transportation (Department), Bureau of Driver Licensing (Bureau), appeals from an order of the Court of Common Pleas of York County (trial court), dated July 24, 2018, sustaining the appeal of Tatiana Goodlett (Licensee) and reinstating Licensee's operating privilege.[1]  We will affirm the trial court's order.

On May 1, 2018, the Bureau issued written notice to Licensee suspending her operating privilege for failure to submit to chemical testing pursuant

---

[1]  By order dated January 18, 2019, this Court precluded Licensee from filing a brief because Licensee failed to conform to this Court's earlier order directing her to do so.  Licensee was unrepresented by counsel before the trial court and is unrepresented on appeal.

to Section 1547(b)(1)(i) of what is commonly referred to as the Implied Consent Law.[2] Licensee appealed her suspension to the trial court, which held a hearing on the matter on July 24, 2018.

At the hearing, the Bureau presented the testimony of Officer Brett Fishel of the Springettsbury Township Police Department, who arrested Licensee and invoked the Implied Consent Law on April 16, 2018. Officer Fishel testified that he was dispatched to respond to a complaint that Licensee was driving in a parking lot while intoxicated and that, on his arrival, he identified the complainant as Licensee's mother (Mother). (Reproduced Record (R.R.) at 36a.) Officer Fishel summarized his conversation with Mother merely as "a brief synopsis of what had occurred with [Licensee] driving around the parking lot," together with Mother's description of Licensee's appearance and explanation that Licensee was then walking back toward her home some distance away. (*Id.* at 37a.) Officer Fishel added that, as he spoke with Mother, he noticed a vehicle double-parked in the nearby parking lot. After Mother's statement, Officer Fishel searched the area for about two minutes and found Licensee walking on the sidewalk behind a Turkey Hill gas station, which he admitted could have been as far as one-half mile from where he took Mother's statement. (*Id.* at 37a, 41a-42a.)

Officer Fishel further testified that when Licensee refused to stop walking after persistent requests, he told her that she was under investigation for driving while intoxicated (DUI) and was not free to leave, to which she responded that she had not been driving and that her mother is mentally ill. (*Id.* at 37a-38a.) She continued to attempt to walk away. Officer Fishel smelled alcohol on Licensee's breath and noticed that her eyes were glassy and she was generally uncooperative,

---

[2] 75 Pa. C.S. § 1547(a)-(b.3).

so he asked Licensee to perform field sobriety tests, which she refused. (*Id.* at 38a.) When Licensee attempted to walk away again after being told that she was not free to leave, Officer Fishel arrested Licensee and transported her to a hospital to take a chemical blood test. (*Id.* at 38a-39a) En route, Officer Fishel read Licensee the warnings from the Department's Form DL-26,[3] and Licensee ultimately refused to submit to a chemical blood test. (*Id.* at 39a.) On cross-examination, Officer Fishel admitted that he did not check the vehicle to determine whether its engine had recently been running. (*Id.* at 42a.)

Licensee testified on her own behalf at the hearing. She stated that she was not driving and that the criminal DUI case against her had been dismissed for lack of evidence. (*Id.* at 44a.) She added that she frequently walks long distances and that Mother lives in a nursing home and was emotionally unstable on the day Licensee was arrested. She testified that she became afraid when the police approached her in the dark and called her by name and that she refused to take sobriety and chemical tests because she had not been driving. (*Id.* at 45a.) On cross-examination, Licensee admitted that she refused the chemical blood test and that Officer Fishel warned her of the consequences of refusal. (*Id.* at 46a-47a.)

At the close of the hearing, the trial court issued an order sustaining Licensee's appeal and rescinding the suspension of her operating privilege. The Bureau appealed that order to this Court, and the trial court issued a Pa. R.A.P. 1925(a) opinion. In its opinion, the trial court explained that, though it found Officer Fishel's testimony credible, it concluded that his testimony was not sufficient to establish that he had reasonable grounds to believe Licensee was

---

[3] Form DL-26 warns of the consequences of refusing a chemical test for intoxication, as required by Section 1547(b)(2)(ii) of the Implied Consent Law.

3

operating a vehicle while intoxicated. The trial court reasoned that, though Officer Fishel had a suspicion Licensee was driving based on Mother's statement, he did not testify about any facts beyond Mother's statement that would have made his suspicion reasonable (such as the temperature of the car's engine or its registered owner). He also did not testify that Mother identified the parked car as the one Licensee allegedly drove. The trial court, therefore, sustained Licensee's appeal.

On appeal,[4] the Bureau asserts that it satisfied its burden of proof, and, therefore, the trial court erred in sustaining Licensee's appeal. Specifically, the Bureau argues that Officer Fishel's testimony—concerning Mother's complaint and description of events, as well as Licensee's noncooperation and indicia of intoxication—demonstrates that he had reasonable grounds to believe Licensee was operating a vehicle under the influence of alcohol and that the trial court erred in concluding otherwise.

Concerning the Bureau's burden of proof in a license suspension case, we have written:

> It is well established that [the Bureau] must prove the following to sustain a one-year driver's license suspension under the Implied Consent Law: the licensee (1) was arrested for driving under the influence by a police officer who had *reasonable grounds* to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of

---

[4] In an appeal from a driver's license suspension, this Court's review is limited to determining whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. *Cesare v. Dep't of Transp., Bureau of Driver Licensing*, 16 A.3d 545, 548 n.6 (Pa. Cmwlth.), *appeal denied*, 23 A.3d 1057 (Pa. 2011). "The question of whether an officer had reasonable grounds to arrest a licensee is a question of law fully reviewable by this court on a case-by-case basis." *Yencha v. Dep't of Transp., Bureau of Driver Licensing*, 187 A.3d 1038, 1044 (Pa. Cmwlth. 2018); *see Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999).

4

alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that a refusal would result in the suspension of his driver's license.

*Yencha*, 187 A.3d at 1044 (emphasis added); *see also* 75 Pa. C.S. § 1547(a) (establishing implied consent to testing "if a police officer has *reasonable grounds* to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [the Vehicle Code[5]]" (emphasis added)). Here, the trial court concluded that the Bureau met its burden with respect to the second, third, and fourth elements listed above. The only remaining issue, therefore, is whether the trial court erred when it concluded that the Bureau failed to prove that Officer Fishel had reasonable grounds to believe that Licensee operated or was in actual physical control of a vehicle while under the influence of alcohol.

The "reasonable grounds" standard under the Implied Consent Law is not demanding and is lesser than the standard required to support an arrest or conviction in a criminal DUI prosecution. *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 437 (Pa. Cmwlth. 2014); *Marone v. Dep't of Transp., Bureau of Driver Licensing*, 990 A.2d 1187, 1190 (Pa. Cmwlth. 2010). "Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, *could have concluded* that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner*, 737 A.2d at 1207 (emphasis added). An officer's belief that a person committed DUI need not be correct in order to be reasonable. *Sisinni v. Dep't of Transp., Bureau of Driver Licensing*, 31 A.3d 1254, 1259 (Pa. Cmwlth. 2011), *appeal denied*, 44 A.3d 1163 (Pa. 2012). This implies that the truth of a statement made to the officer is not relevant—the question is whether the

---

[5] 75 Pa. C.S. §§ 101-9805.

officer reasonably believed (or disbelieved) the statement under the circumstances at the time. *See White v. Cmwlth.*, 428 A.2d 1044, 1047 n.4 (Pa. Cmwlth. 1981).

In determining whether the Bureau has shown reasonable grounds, a court must consider the totality of the circumstances available to the officer at the time, as reflected in the record. *Banner*, 737 A.2d at 1207. Those circumstances include: (1) evidence that the licensee had driven the vehicle at some point before the police arrived, such as the licensee's possession of keys, the vehicle's ownership and location, and whether the engine was running or warm, *id.*; *see Dep't of Transp., Bureau of Driver Licensing v. Hall*, 666 A.2d 376, 378 (Pa. Cmwlth. 1995); (2) the licensee's appearance and behavior, *Marone*, 990 A.2d at 1190; and (3) statements by the licensee and others. *See McKnight v. Dep't of Transp.*, 549 A.2d 1356, 1358 (Pa. Cmwlth. 1988); *White*, 428 A.2d at 1047. Even when a licensee, at the scene, directly denies operating a vehicle, the officer need not believe that statement if other circumstances support a different, but reasonable, conclusion. *See Dep't of Transp., Bureau of Driver Licensing v. Bird*, 578 A.2d 1345, 1349 (Pa. Cmwlth. 1990).

In addition to all other relevant circumstances, the temporal connection between intoxication and driving is of particular significance. The Implied Consent Law requires an arresting officer to believe that two independent events coincided—a person (1) operated a vehicle (2) *while* intoxicated.[6] Where, as here, the officer

---

[6] In passing, we note that this nexus prevents the substantial burdens of the Implied Consent Law from falling on *all* drivers, or on *all* intoxicated pedestrians or other nondrivers. The constitutionality of the Implied Consent Law is well established, *see Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1037 (Pa. Cmwlth. 2018) (en banc), and while we sympathize with its purpose of protecting the driving public from harm, not even such an important purpose justifies its application to a person without reasonable grounds to believe that the person operated a vehicle *while* intoxicated. *See generally Navarette v. California*, ___ U.S. ___, 134 S. Ct. 1683, 1697 (2014) (Scalia, J., dissenting) ("Drunken driving is a serious matter, but so is the loss of our freedom to come and go as we please without police interference.")

did not directly observe the coincidence of those two events, the Bureau must show that the officer had reasonable grounds to believe that operation and intoxication occurred at the same moment in time. *See Marnik v. Dep't of Transp., Bureau of Driver Licensing*, 145 A.3d 208, 214 (Pa. Cmwlth. 2016). Speculation as to a licensee's level of intoxication while driving is not reasonable grounds. *Dep't of Transp., Bureau of Driver Licensing v. Mulholland*, 527 A.2d 1123, 1124 (Pa. Cmwlth. 1987). "[A]t the very least, there must be some *objective* evidence that the motorist exercised control over the movement of the vehicle *at the time* he was intoxicated." *Banner*, 737 A.2d at 1207 (emphasis added). With the understanding that the intoxicating effects of alcohol consumption are not constant through time, this Court has held that even brief delays between operation and observed intoxication can preclude a reasonable belief that a licensee was driving *while* intoxicated. *Marnik*, 145 A.3d 208, 213-14 (holding that 15-minute delay did not vitiate reasonable grounds and distinguishing longer delays in *Mulholland*, 527 A.2d 1123 (25-minute delay) and *Fierst v. Commonwealth*, 539 A.2d 1389 (Pa. Cmwlth. 1988) (one-hour delay)).

Turning to the facts of the case before us, we note that Officer Fishel's testimony established that he did not directly observe Licensee operating a vehicle. Rather, he relied upon Mother's complaint that Licensee was driving while intoxicated and upon his observations of Licensee's later behavior. Though Officer Fishel directly observed indicia of intoxication in his contact with Licensee, it appears that his belief that she operated a vehicle while intoxicated was grounded solely on Mother's complaint and statement. That statement, as established in the record, was minimal: Mother merely complained that Licensee was "driving around the parking lot and was intoxicated," and her later statement to Officer Fishel was

7

merely "a brief synopsis of what had occurred." (R.R. at 36a-37a.) Many of the typical circumstances surrounding reasonable grounds in other cases—vehicle ownership and possession, physical evidence of operation, detailed statements by witnesses, and witness identification of the vehicle itself—are absent from the record here. Officer Fishel admitted that he did not even check the temperature of the vehicle he identified (with no apparent basis in the record) as the one Licensee operated. At the hearing, the Bureau conceded that the record does not contain any information about the ownership of that vehicle. Based on the record, we are left to speculate about Licensee's connection to the vehicle in Officer Fishel's testimony, with no guidance other than Mother's statement that, at some point in time, Licensee "was driving." That level of speculation is inconsistent with the standard of proof for reasonable grounds.

Of particular importance here is the absence of any testimony establishing a clear temporal link between Licensee's alleged operation of a vehicle and her later encounter with Officer Fishel. The only testimony in the record regarding timing is that Mother's initial complaint occurred around 7:30 p.m., and that Officer Fishel located Licensee within two minutes of beginning to search for her. There is no testimony about whether Officer Fishel understood Mother's complaint to be reporting a current event or a past event.[7] Nor did Officer Fishel's testimony establish the time at which he responded to the complaint or the amount of time he spent speaking to Mother before searching for Licensee. The absence of any such testimony forces us to speculate about the reasons for Officer Fishel's belief

_____

[7] The language of Mother's statement—that Licensee "was driving"—is ambiguous. As heard by Officer Fishel at the time, the statement could have meant that Licensee was driving at the time Mother made the complaint, or it could have meant that Licensee had driven at some indefinite point prior to the complaint. Nothing in the record clarifies the nature of Mother's statement as understood by Officer Fishel, so we are left to speculate.

8

that the level of intoxication he observed in Licensee—whom he discovered up to one-half mile away from the alleged scene—was present at the time she operated a vehicle. Accordingly, the instant case is distinguishable from other cases in which an arresting officer similarly relied on others' statements but also *testified* about why he believed operation and intoxication coincided.[8]

Viewing all of the relevant facts and circumstances available to Officer Fishel at the time, as established in the record, we conclude that the Bureau has not met its burden to demonstrate that Officer Fishel had reasonable grounds to believe that Licensee was operating a vehicle while intoxicated. The trial court, therefore, did not err in sustaining Licensee's appeal.

Accordingly, we will affirm the trial court's order.

P. KEVIN BROBSON, Judge

---

[8] In particular, we note that the Bureau's comparison of this case with *Patterson v. Commonwealth*, 587 A.2d 897 (Pa. Cmwlth. 1991), though apt, is imperfect. In *Patterson*, the officer relied upon the complaint and later statements of one Ms. Howard, who said that the licensee had been driving after her slowly as she walked and had later left his vehicle and followed her on foot. When the officer returned with Ms. Howard to the area of the parked vehicle, he found the licensee visibly intoxicated some distance away, and Ms. Howard identified the licensee as the driver, though the licensee did not admit to owning or driving the vehicle. *Id.* at 898-99. Although similar to that point, a critical difference is that the officer in *Patterson* testified that his encounter with the licensee occurred *seven to ten minutes* after Ms. Howard's complaint by phone. *Id.* at 900. Here, there is no such testimony, and we distinguish *Patterson* on that basis.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tatiana Goodlett                      :

                                   :

            v.                 :    No. 1171 C.D. 2018

                                   :

Commonwealth of Pennsylvania,   :

Department of Transportation,    :

Bureau of Driver Licensing,      :

                   Appellant   :

# **O R D E R**

AND NOW, this 17th day of May, 2019, the order of the Court of Common Pleas of York County, dated July 24, 2018, is AFFIRMED.

_____

P. KEVIN BROBSON, Judge
