# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Justin M. Palitti,                                             :
                 Appellant                                   :
                                                :
                 v.                                        :    No. 909 C.D. 2023
                                                  :    Submitted:  October 8, 2024
Commonwealth of Pennsylvania,                  :
Department of Transportation,                        :
Bureau of Driver Licensing                           :

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                     **HONORABLE CHRISTINE FIZZANO CANNON,** Judge (P.)
                     **HONORABLE MATTHEW S. WOLF**, Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**     **FILED: December 5, 2024**

Justin M. Palitti (Licensee) appeals from the Order of the Court of Common Pleas of Beaver County (trial court), exited July 17, 2023, denying his statutory appeal from a one-year suspension of his driving privilege and a one-year disqualification of his commercial driving privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department).    The Department imposed the one-year suspension and

disqualification pursuant to Sections 1547(b)(1)(i)[1] and 1613(d.1)[2] of the Vehicle Code, respectively, because of Licensee's refusal to submit to chemical testing following his arrest for driving under the influence of alcohol or a controlled substance (DUI) in violation of Section 3802 of the Vehicle Code.[3] We affirm the trial court's Order.

## I. BACKGROUND

On March 11, 2021, the Department mailed two notices to Licensee stating his driving privilege would be suspended and his commercial driving privilege disqualified for one year, effective April 15, 2021, for his refusal to submit to chemical testing following his DUI arrest on December 10, 2020. (Reproduced Record (R.R.) at 10a-15a.) Licensee timely appealed to the trial court, which held a

---

[1] 75 Pa.C.S. § 1547(b)(1)(i). Section 1547(b)(1)(i) of the Vehicle Code provides:

(1) If any person placed under arrest for a violation of section 3802[, 75 Pa.C.S. § 3802, prohibiting driving under the influence of alcohol or a controlled substance,] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii) [relating to prior offenses], for a period of 12 months.

Id. Section 1547 of the Vehicle Code is commonly referred to as the Implied Consent Law.

[2] 75 Pa.C.S. § 1613(d.1). Section 1613(d.1) of the Vehicle Code provides, in pertinent part:

Upon receipt of a report of [chemical] test refusal, the [D]epartment shall disqualify the person who is the subject of the report for the same period as if the [D]epartment had received a report of the person's conviction for violating one of the offenses listed in section 1611(a)[, 75 Pa.C.S. § 1611(a),] (relating to disqualification). . . .

Id. In this case, the disqualification period is one year because it was Licensee's first violation of Section 3802 of the Vehicle Code. 75 Pa.C.S. § 1611(a)(1).

[3] 75 Pa.C.S. § 3802.

*de novo* hearing on May 25, 2023. At the hearing, the Department called Officers Jared Rogers (Ofc. Rogers) and Nicollette Lopez (Ofc. Lopez) of the Hopewell Township Police Department (HTPD) to testify as witnesses to the events of December 10, 2020, which led to the suspension and disqualification of Licensee's driving and commercial driving privileges. (*Id.* at 26a-81a.)

Ofc. Rogers testified as follows.[4] On December 10, 2020, three members of HTPD were dispatched to a motor vehicle accident involving an overturned vehicle. (*Id.* at 28a.) When the officers arrived on the scene, the officers found Licensee, an adult woman (later identified as Licensee's wife (Wife)), and her seven-year-old child already outside of the overturned vehicle.[5] (*Id.* at 29a.) To begin their investigation into what caused the accident, Ofc. Rogers questioned Wife, while Ofc. Lopez spoke to the child. (*Id.*) At the hearing, when Ofc. Rogers started to testify as to what Wife told him, Licensee's counsel objected on hearsay grounds. (*Id.*)

In response to Licensee's hearsay objection, the Department cited *Duffy v. Department of Transportation, Bureau of Driver Licensing*, 694 A.2d 6 (Pa. Cmwlth. 1997), arguing that "while [Ofc. Roger's testimony] is an out-of-court statement, it is not being asserted for the truth of the matter." (R.R. at 31a.) Rather, the Department argued, it was asserted for "[Ofc.] Rogers' state of mind in interpreting the events and the question of reasonable grounds on December 10, 2020." (*Id.*) Licensee disagreed with the Department's assertion that the statement was not being used for its truth. (*Id.*) Instead, Licensee argued, "the whole purpose of eliciting these hearsay statements is to establish who the driver of the motor

---

[4] At the time of the accident, Ofc. Rogers had been with HTPD for approximately 12 years. (R.R. at 27a.) During that time, Ofc. Rogers received training on how to conduct DUI stops and field sobriety tests and recognize the signs of drug and alcohol intoxication. (*Id.*)

[5] When the officers arrived, Wife was crawling into the passenger's side door to retrieve her cell phone and the child was sitting in a passerby's vehicle to keep warm. (R.R. at 29a.)

3

vehicle was, and they're trying to use it as substantive evidence that they had reasonable grounds to ask [Licensee] to submit to chemical testing." (*Id.*) After further argument from both parties, the trial court directed the Department to restate its question. (*Id.* at 33a.) Ofc. Rogers once again started to answer the question when Licensee's counsel renewed his hearsay objection. (*Id.* at 34a.) In response, the trial court noted counsel's objection, but stated it wanted to hear Ofc. Rogers' testimony before evaluating the objection. (*Id.* at 35a-36a.)

The Department restarted its questioning. (*Id.* at 36a.) Ofc. Rogers testified that Wife "stated that she was driving the vehicle after leaving a bar after having an argument with her ex-husband." (*Id.*) Further, Ofc. Rogers testified:

> Based on that information, we continued with our investigation into taking her word that she was the DUI driver. Through further investigation, . . . [Wife] described to me [] how . . . she yanked the wheel of the vehicle, demonstrating [by] using her left hand to yank the wheel of the vehicle. That was a sign that she was not the driver of the vehicle.[6]
>
> . . . .
>
> As I continued with my investigation [believing] [Wife] [w]as the driver of said vehicle, she was given field sobriety testing. Based on what I observed, she did show signs of impairment. . . .
>
> . . . .
>
> During the [child's] evaluation [by paramedics], which myself . . . and [Ofc.] Lopez were apart [sic] of, there were other signs that [Wife] had abrasions on her right side of her chest, both [Wife] and the [child]. Based on my experience in accidents, if you have some kind of abrasion on the side from a seat belt crash, that would indicate which -- . . . .

---

[6] Licensee's counsel objected to this testimony on speculation grounds. (R.R. at 37a.)

(*Id.* at 37a-39a.) Licensee's counsel interjected, objecting that Ofc. Rogers cannot draw conclusions on how Wife and the child sustained their injuries. (*Id.* at 39a.) After hearing argument from both parties, the trial court asked Ofc. Rogers to clarify his testimony. (*Id.*) Ofc. Rogers testified that, at the time, he presumed the bruising on the right shoulder and clavicle of Wife and the child resulted from the seat belt. (*Id.* at 39a-40a.) In its Opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925, Pa.R.A.P. 1925 (1925 Opinion), the trial court concluded that, "based on his experience, [Ofc. Rogers] believed that such abrasions typically result from the seatbelt, and their location on the right side of the chest would indicate that both the minor child and [Wife] were seated on the right side of the vehicle—the passenger side." (1925 Opinion (Op.) at 4.)

Ofc. Rogers proceeded to testify as follows. Ofc. Lopez informed him that when Ofc. Lopez asked the child where she sat in the vehicle, the child responded: "behind mommy." (R.R. at 40a-41a.) Licensee's counsel again objected on hearsay grounds, arguing:

> [A]ll of this evidence is trying to show that [Licensee] was the operator of the vehicle to prove reasonable grounds to submit to chemical testing. That's why it's being used substantively, not for [Ofc.] Rogers' state of mind, [but] to convince the [trial c]ourt that [Licensee] was, in fact, the driver of the motor vehicle.

(*Id.* at 41a.) In response, the Department argued further its earlier assertion:

> [T]he question here is [] not the ultimate question of fact whether or not [Licensee] was operating the vehicle [on] the night in question. The question is whether [Ofc. Rogers'] conclusion . . . was reasonable as a matter of law . . . .
>
> . . . .

5

[Despite] [t]he fact that there may be an alternative, and . . . quite frankly, reasonable alternative analysis as to what happened that night, the sole inquiry is whether [Ofc.] Rogers' belief was reasonable.

(*Id.* at 41a-42a.) Thus, the Department argued, "the hearsay evidence is unequivocally permitted in this case because it goes to [Ofc. Rogers'] state of mind." (*Id.* at 44a.) The trial court allowed the Department to proceed. (*Id.*)

Ofc. Rogers continued, testifying that "in addition to saying she was seated behind mommy[,] when asked who was driving the vehicle, [the child] stated her step dad."[7] (*Id.*) Accordingly, "it became clear based on my observations after the injuries [and] after the witness statements[,] that [Licensee] was the driver of the vehicle," not Wife. (*Id.* at 45a.) "This is when," Ofc. Rogers testified, "we changed our reading of . . . the DL-26[8] [from Wife] to [Licensee] . . . [as] it was determined that he was actually the driver of the vehicle." (*Id.*)

Ofc. Rogers then recounted other factors which played a role in establishing his belief, on December 10, 2020, that Licensee operated the vehicle while under the influence of alcohol. Ofc. Rogers testified:

[T]hough we did not do any formal testing on [Licensee] . . . there was a smell of alcoholic breath on his person, and after I spoke with him before reading the DL-26, there was a smell of alcohol on his breath and he . . . had glossy eyes, but we did not do any field sobriety testing on him due to, at the time, we were under the impression that [Wife] was the driver of the vehicle.

---

[7] Based on his investigation, Ofc. Rogers concluded Licensee was the child's stepfather. (*See* R.R. at 44a-45a.)

[8] A DL-26 Form is used by Pennsylvania law enforcement to advise drivers of the consequences of refusing to submit to chemical testing under Section 1547 of the Vehicle Code. *See Yourick v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 341, 342-43, 345 (Pa. Cmwlth. 2009).

(*Id.* at 46a-47a.)   Moreover, "[Licensee] did have some slurred speech while speaking with him as well." (*Id.* at 47a-48a.)   These signs, Ofc. Rogers testified, are "usually all the indicators of someone under the influence of an alcoholic beverage." (*Id.* at 48a.)

Ofc. Rogers then testified that he read to Licensee the DL-26 Form, at which time Licensee refused chemical testing.[9] (*Id.*)   When asked why Licensee refused the test, Ofc. Rogers testified that "[Licensee] stated he couldn't get a DUI because he wasn't the driver of the vehicle[,] so he was going to refuse the test." (*Id.* at 51a.)

On cross-examination, Ofc. Rogers admitted he never administered a field sobriety test to Licensee.  (*Id.* at 56a-57a.)   However, Ofc. Rogers reaffirmed that, after the officers discovered the bruising from the seat belts on Wife and the child, he determined Licensee was the one that was going to be charged with driving the vehicle.  (*Id.* at 56a.)

On redirect examination, the Department asked Ofc. Rogers whether Licensee became combative at any point on the night in question.  (*Id.* at 57a-58a.)   In response, Ofc. Rogers stated:  "[Licensee] became upset when I had advised him about the allegation against him at the time, yes." (*Id.*)   The Department further asked whether combativeness is sometimes a sign that a driver is intoxicated, to which Ofc. Rogers responded, "[y]es, they can act in ways that they normally wouldn't while sober." (*Id.*)

Next, the Department called Ofc. Lopez, who testified consistently with Ofc. Rogers.[10] (*Id.* at 59a-73a.)   Additionally, Ofc. Lopez testified that she interacted

---

[9] At the hearing, the Department produced a copy of the DL-26 Form used on December 10, 2020.  (R.R. at 49a.)  The form contained Licensee's signature acknowledging he had read the form and been advised of its contents.  (*Id.*)

[10] Licensee's counsel renewed the hearsay objections previously raised regarding what Wife and her child told the officers, which the trial court again overruled.  (R.R. at 60a, 65a.)

with witnesses at the scene. When asked what the witnesses stated, Ofc. Lopez testified that "they did not observe [the accident], but they said that the male on scene had told them that his tire blew and somehow he lost control of his vehicle." (*Id.* at 66a.) Again, Licensee's counsel objected on hearsay grounds, which the trial court initially sustained before allowing questioning to resume in response to the Department's renewed *Duffy* argument. (*Id.* at 66a-68a.) On cross-examination, Ofc. Lopez testified that she transported Licensee and the child to the police station, while Ofc. Rogers transported Wife. (*Id.* at 70a-71a.) After Ofc. Lopez's testimony, both parties rested their cases. Licensee neither testified nor offered any evidence during the hearing. (*Id.* at 73a.)

After the hearing, the trial court allowed Licensee and the Department to submit post-hearing briefing on the hearsay issues. The Department submitted a brief, further arguing its position that the out-of-court statements were admissible as non-hearsay because the statements were not offered for the truth of the matter asserted, *i.e.*, Licensee, in fact, operated the vehicle under the influence of alcohol. (*Id.* at 89a-92a.) Rather, the Department argued, it offered the out-of-court statements merely for the purpose of proving Ofc. Rogers' state of mind, *i.e.*, to prove he had reasonable grounds to believe Licensee operated the vehicle under the influence. (*Id.*) Licensee elected not to submit a brief.

On July 17, 2023, the trial court entered the Order dismissing Licensee's statutory appeal, which Licensee timely appealed. (*Id.* at 96a-103a.) In its 1925 Opinion, the trial court reaffirmed its Order, concluding: (1) the contested testimony was permissible non-hearsay to show Ofc. Rogers' state of mind; and (2) Ofc. Rogers has reasonable grounds to believe Licensee operated the vehicle and did so

8

under the influence of alcohol and, thus, reasonable grounds to request a chemical test. (*Id.* at 111a, 113a-14a; 1925 Op. at 8, 10-11.)

## II.  DISCUSSION[11]

To sustain a suspension of driving privileges and a disqualification of commercial driving privileges under Sections 1547 and 1613 of the Vehicle Code, respectively, the Department has the burden of proving the following elements:

> (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so[,] and (4) the licensee was warned that refusal would result in a license suspension.

*Parrish v. Dep't of Transp., Bureau of Driver Licensing*, 318 A.3d 1025, 1029 (Pa. Cmwlth. 2024) (quoting *Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013)).  Here, Licensee raises two issues before this Court:  (1) whether the trial court erred in admitting the objected to hearsay evidence the Department presented; and (2) whether the trial court erred in concluding the officer had reasonable grounds to believe Licensee operated the vehicle and did so under the influence of alcohol and, thus, reasonable grounds to request Licensee submit to a chemical test.

### A. Hearsay Objection

We begin with the issue of whether the trial court erred in admitting the objected to hearsay evidence presented by the Department.

---

[11] Our review is limited to determining whether the trial court's findings are supported by substantial evidence, errors of law have been committed, and the trial court's determinations demonstrate an abuse of discretion.  *Finnegan v. Dep't of Transp., Bureau of Driver Licensing*, 844 A.2d 645, 647 n.3 (Pa. Cmwlth. 2004).

Under Rule 802 of the Pennsylvania Rules of Evidence, hearsay is inadmissible evidence unless it meets an established exception. Pa.R.E. 802. Rule 801(c) of the Rules of Evidence defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). In other words, "[h]earsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted." *Heddings v. Steele*, 526 A.2d 349, 351 (Pa. 1987). Accordingly, when an out-of-court statement is offered for a purpose other than to prove the truth of the matter asserted, the statement is not hearsay. *See Commonwealth v. Busanet*, 54 A.3d 35, 68 (Pa. 2012). It is well settled such a purpose includes to establish a law enforcement officer's state of mind. *See, e.g.*, *Spera v. Dep't of Transp., Bureau of Driver Licensing*, 817 A.2d 1236, 1238 n.2 (Pa. Cmwlth. 2003) ("A law enforcement officer's hearsay testimony is admissible for purposes of proving the state of mind of the officer hearing the statement or explaining the reason for the conduct of the officer in response to hearing the statement.").

It is further well settled that out-of-court statements are admissible to prove an officer's state of mind to establish the officer had reasonable grounds to believe an individual operated a vehicle. *See Duffy*, 694 A.2d at 9. As this Court explained in *Duffy*,

> if the out-of-court statement is offered *not* to prove the truth of the statement made by the out-of-court declarant, but instead to prove that the statement was in fact made, the out-of-court statement is not hearsay regardless of who made it or how it was reported to the witness. . . . In this case, the out-of-court statement was introduced only to prove that the statement was, in fact, made. Ultimately, it is the mental state of [the officer]'s mind, *i.e.*, his reasonable belief that [the licensee] had

10

been driving, that is the issue, and the truth of *that* fact is the relevant inquiry. Therefore, it is admissible.

*Id.* (emphasis in original) (internal citation omitted); *see also Hartmann v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 690 C.D. 2019, filed Apr. 8, 2020), slip op. at 6 ("Where the statement is offered to show the police officer's 'reasonable belief that [the licensee] had been driving,' the statement is not hearsay and is admissible.") (alteration in original) (citing *Patterson v. Commonwealth*, 587 A.2d 897, 901 (Pa. Cmwlth. 1991)).[12] Likewise, out-of-court statements are not hearsay and, thus, are admissible when used to prove an officer had reasonable grounds to believe the driver operated a vehicle while intoxicated. *Menosky v. Commonwealth*, 550 A.2d 1372, 1374 (Pa. Cmwlth. 1988); *see also Blalock v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1592 C.D. 2012, filed May 28, 2013), slip op. at 5 (holding out-of-court statements were admissible "to establish [the officer]'s state of mind, *i.e.*, to establish that he had reasonable grounds to believe [the l]icensee had operated his vehicle while intoxicated").

Here, the present case is indistinguishable from the many precedents of this Court. Licensee contends the trial court erred because it allowed the Department to use inadmissible hearsay evidence to prove, in fact, Licensee operated the vehicle. However, the Department did not offer the out-of-court statement for the truth of the matter asserted, *i.e.*, Licensee, in fact, operated the vehicle. Instead, the Department offered the testimony to establish that Ofc. Rogers **reasonably believed** Licensee operated his vehicle while intoxicated. (*See* R.R. at 31a; 1925 Op. at 8; Department's Brief (Br.) at 11-12.) Indeed, the Department need not even prove

---

[12] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

11

Licensee, in fact, operated the vehicle and did so while intoxicated; rather, the Department only needed to prove Ofc. Rogers had "reasonable grounds to believe that the licensee was driving while under the influence." *See Parrish*, 318 A.3d at 1029. An officer has reasonable grounds to believe an individual was operating a motor vehicle while under the influence of alcohol "if a reasonable person in the position of the police officer, viewing the facts and circumstances as they appeared to the officer at the time, could conclude that the driver drove his car while under the influence of alcohol." *McCallum v. Commonwealth*, 592 A.2d 820, 822 (Pa. Cmwlth. 1991). To be clear, the testimony is not hearsay if it is offered to show the facts and circumstances as they appeared to the officer at the time. Thus, it is not necessarily the officer's "state of mind" that is at issue, but the facts and circumstances surrounding the relevant event as they appeared to the officer that are at issue. Therefore, the statements are admissible because the statements are not hearsay.[13] *See Duffy*, 694 A.2d at 9; *Menosky*, 550 A.2d at 1374.

Accordingly, the trial court did not err on this issue.

*B. Reasonable Grounds*

We now turn to the issue of whether the trial court erred in concluding the officers had reasonable grounds to believe Licensee operated the vehicle and did so

---

[13] Licensee also contends the absence of corroboration in Ofc. Rogers' testimony lends additional doubt to the veracity of the Department's evidence. In support of this assertion, Licensee cites *Menosky v. Commonwealth*, 550 A.2d 1372 (Pa. Cmwlth. 1988), and *McCullough v. Department of Transportation, Bureau of Driver Licensing*, 645 A.2d 378 (Pa. Cmwlth. 1994), for the proposition that uncorroborated testimony can compromise its reliability and diminish the weight of the evidence. (Licensee's Br. at 16.) However, neither case stands for such a proposition. *Menosky* does not discuss the corroboration of evidence. As for *McCullough*, this Court stated in *Duffy* that it "stands for the proposition that the trial judge, as fact-finder, has broad discretion to make credibility determinations. It does not stand for the proposition that corroborating testimony is required to support an officer's testimony regarding third[-]party statements." 694 A.2d at 10.

under the influence of alcohol and, thus, had reasonable grounds to request Licensee submit to a chemical test.

To sustain a suspension and disqualification of driving and commercial driving privileges under Sections 1547 and 1613 of the Vehicle Code, respectively, the Department has the burden of proving, pertinent here, that "the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence." *Parrish*, 318 A.3d at 1029. "Whether reasonable grounds exist is a question of law subject to our plenary review." *Bergenstock v. Dep't of Transp., Bureau of Driver Licensing*, 311 A.3d 1201, 1204 (Pa. Cmwlth. 2024). When evaluating whether the officer had reasonable grounds, "this Court considers the totality of the circumstances to determine, as a matter of law, whether a person in the position of the arresting officer could reasonably have reached this conclusion." *Parrish*, 318 A.3d at 1029-30. "The test for reasonable grounds is not very demanding, and it is not necessary for the police officer to be correct in his or her belief." *Bergenstock*, 311 A.3d at 1204 (citing *Dep't of Transp., Bureau of Driver Licensing v. Bird*, 578 A.2d 1345, 1348 (Pa. Cmwlth. 1990)). "Reasonable grounds are established when a 'police officer, viewing the facts and circumstances as they appeared at the time, **could have concluded** that the motorist was operating the vehicle while under the influence of intoxicating liquor.'" *Id.* (emphasis added) (quoting *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999)). "[C]ourts appropriately defer to an investigating officer's experience and observations where reasonable grounds exist to support the officer's belief based on the totality of the circumstances." *Yencha v. Dep't of Transp., Bureau of Driver Licensing*, 187 A.3d 1038, 1045 (Pa. Cmwlth. 2018).

Although there is no bright line for establishing reasonable grounds to believe a licensee operated a vehicle, "at the very least, there must be some objective evidence that the motorist exercised control over the movement of the vehicle at the time he was intoxicated." *Banner*, 737 A.2d at 1207. When determining whether an officer had reasonable grounds to believe a licensee had "actual physical control" of a vehicle, "the court must consider the totality of the circumstances, including the location of the vehicle, whether the engine was running and whether there was other evidence indicating that the motorist had driven the vehicle at some point prior to the arrival of the police." *Id.*; *see also Bold v. Dep't of Transp., Bureau of Driver Licensing*, 320 A.3d 1185, 1201 (Pa. 2024) (reaffirming *Banner's* test, which "must be applied in a fashion that honors the line . . . 'distinguish[ing] circumstances where a motorist is driving his vehicle while under the influence of alcohol, which the statute is intended to prevent, and circumstances where a motorist is physically present in a motor vehicle after becoming intoxicated'"). An officer, however, need not actually witness a licensee operate a vehicle to establish reasonable grounds. *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 437 (Pa. Cmwlth. 2014); *see also Gaskin v. Dep't of Transp., Bureau of Driver Licensing*, (Pa. Cmwlth., No. 1178 C.D. 2018, filed Jan. 3, 2023), slip op. at 12 ("[T]he Department is not required to establish that either the arresting officer or another person directly observed a licensee operating a vehicle or that the licensee admitted to doing so for it to meet its burden of proving reasonable grounds."). "[P]roving that the licensee had control of the movements of either the machinery of the motor vehicle or of the management of the movement of the vehicle itself, either by direct evidence **or evidence supporting an inference** that the licensee previously had such

14

control, is sufficient." *Dep't of Transp., Bureau of Driver Licensing v. Bendik*, 535 A.2d 1249, 1251 (Pa. Cmwlth. 1988) (emphasis added).

Moreover, while there are also no bright line indicators a licensee must exhibit for an officer to establish reasonable grounds that the licensee drove while under the influence of alcohol, sufficient indicators include: "staggering, swaying, falling down, belligerent or uncooperative behavior, slurred speech, and the odor of alcohol." *Sisinni v. Dep't of Transp., Bureau of Driver Licensing*, 31 A.3d 1254, 1258 (Pa. Cmwlth. 2011); *see also Walkden*, 103 A.3d at 437 (stating factors include: "staggering, swaying or uncooperative behavior by the licensee; and the odor of alcohol"). Additionally, when combined with "at least one other obvious physical condition," glassy eyes are another indicator sufficient to establish reasonable grounds. *See Sisinni*, 31 A.3d at 1258. It is not necessary for a licensee to fail a field sobriety test. *See id.* at 1257.

Here, the trial court concluded, under the totality of the circumstances, Ofc. Rogers had reasonable grounds to believe Licensee operated the vehicle and did so while under the influence of alcohol. (1925 Op. at 10-11.) Reviewing these circumstances in their totality, we agree with the trial court.

First, although neither Ofc. Rogers nor Ofc. Lopez witnessed Licensee operate the vehicle, both testified to evidence supporting an inference sufficient to establish reasonable grounds to believe Licensee operated the vehicle. *See Bendik*, 535 A.2d at 1251. For starters, Ofc. Rogers testified that Wife stated she caused the accident when she yanked the wheel of the vehicle with her left hand. (R.R. at 37a-39a.) "That was a sign that she was not the driver of the vehicle," according to Ofc. Rogers. (*Id.*) Further, Ofc. Rogers testified that both Wife and the child had abrasions on their right shoulders and clavicles, which he determined, based on his experience,

15

were caused by their seat belts going over their right shoulders. (*Id.* at 37a-40a.) As the trial court logically concluded, the "location [of the abrasions] on the right side of the chest would indicate that both the minor child and [Wife] were seated on the right side of the vehicle—the passenger side." (1925 Op. at 4.) Additionally, Ofc. Rogers testified that the child stated Licensee (her stepfather) was driving the vehicle at the time of the accident, while she sat "behind mommy." (R.R. at 44a.) Moreover, Ofc. Lopez testified that, although they did not see the accident, witnesses at the scene stated Licensee told them he lost control of the vehicle, which implies Licensee was the driver. (*Id.* at 66a.) Based on their experiences and training as officers, Ofc. Rogers and Ofc. Lopez testified that the foregoing evidence led them to conclude Licensee was the driver of the vehicle at the time of the accident. (*Id.* at 45a.)

Licensee contends this evidence fails to concretely establish that he exerted actual physical control over the vehicle. Licensee insists direct evidence must be shown to prove there were reasonable grounds to believe he was in actual physical control of the vehicle, such as the officers discovering Licensee in the driver's seat, slumped over the steering wheel, the key in the ignition, the engine running, etc. (*See* Licensee's Br. at 20-22.) While those types of direct evidence are sufficient to form reasonable grounds to believe a licensee operated the vehicle, *see, e.g.*, *Banner*, 737 A.2d at 1207-08 (discussing cases), the officers are not required to have direct evidence. *See Bendik*, 535 A.2d at 1251. Rather, evidence supporting an inference that a licensee previously had control over the vehicle is sufficient to establish reasonable grounds to believe he operated the vehicle at the time of the accident. *See Bendik*, 535 A.2d at 1251. Because of the officers' experience and observations, in light of the totality of circumstances as they appeared at the time, Ofc. Rogers and

16

Ofc. Lopez reasonably could have concluded Licensee operated the vehicle before the accident. Indeed, the evidence presented to the trial court indicated and supported the inference that Licensee had driven the vehicle before the accident and arrival of the officers.

Second, the evidence presented at the hearing was sufficient to establish reasonable grounds that Licensee operated the vehicle while under the influence of alcohol. Ofc. Rogers testified that Licensee had the smell of alcohol on his breath, glossy eyes, and slurred speech, and became upset when advised about the DUI allegation against him. (R.R. at 46a-48a, 57a-58a.) Based on his experience, Ofc. Rogers testified that these are "usually all the indicators of someone under the influence of an alcoholic beverage." (*Id.* at 48a.) The trial court agreed with that conclusion, finding Ofc. Rogers had reasonable grounds to believe Licensee was under the influence of alcohol at the time of the accident. (1925 Op. at 11.) Our case law supports such a conclusion, as well. *See Sisinni*, 31 A.3d at 1258 (holding an officer had reasonable grounds to believe the licensee operated a vehicle while under the influence because the licensee had a slight odor of alcohol, had glassy eyes, and admitted to having consumed alcohol); *Walkden*, 103 A.3d at 437 (holding an officer had reasonable grounds to believe the licensee operated a vehicle while under the influence because, *inter alia*, the licensee slurred his speech and had an odor of alcohol).

Accordingly, given the totality of the circumstances at the time of the accident, we hold the trial court did not err in concluding the officers had reasonable grounds to believe Licensee operated the vehicle and did so under the influence and, therefore, had reasonable grounds to request that License submit to a chemical test.

17

## III.    CONCLUSION

Therefore, for the foregoing reasons, we affirm.

_____
**RENÉE COHN JUBELIRER,** President Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Justin M. Palitti,              :
             Appellant      :
                            :
           v.               :    No.  909 C.D. 2023
                            :
Commonwealth of Pennsylvania,    :
Department of Transportation,      :
Bureau of Driver Licensing         :

## **O R D E R**

     **NOW**, December 5, 2024, the Order of the Court of Common Pleas of Beaver County, entered in the above-captioned case, is **AFFIRMED**.

 

 

                              _____

                              **RENÉE COHN JUBELIRER,** President Judge